IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BUETTNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER L. BUETTNER, APPELLANT.

Filed November 26, 2024.    No. A-24-549.

Appeal from the District Court for Hall County: JOHN H. MARSH, Judge. Affirmed.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Christopher L. Buettner appeals from an order of the Hall County District Court denying his request to transfer his criminal proceedings to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

On January 22, 2024, the State filed an information charging Buettner with robbery, in violation of Neb. Rev. Stat. § 28-324 (Reissue 2016), a Class II felony; use of a firearm to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1)(a)(c) (Reissue 2016), a Class IC felony; and use of a deadly weapon (a baseball bat) to commit a felony, in violation of § 28-1205(1)(a)(b), a Class II felony. The information indicates that the event which gave rise to the charges occurred on October 24, 2023. On that date, Buettner was 16 years 7 months old. He was born in March 2007.

- 1 -

On February 10, 2024, Buettner filed a motion to transfer the matter from district court to juvenile court under Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2022). A juvenile transfer hearing was held on June 20. During this hearing, the State offered four exhibits into evidence, including the police reports which gave rise to Buettner's current charges; the affidavit in support of his arrest warrant; and certified copies of Buettner's prior juvenile court cases and criminal cases. The State also called Buettner's former diversion officer and juvenile probation officers to testify.

In his case-in-chief, Buettner offered the testimony of his mother, Sheena Buettner. In addition, he offered two exhibits, a transcript for his online schooling and certificates of completion for courses he completed while on diversion.

### 1. OCTOBER 24, 2023, ROBBERY

Police reports revealed that in the early morning hours of October 24, 2023, law enforcement officers in Grand Island, Nebraska, were dispatched to a residence after a 911 call indicated that four males armed with a handgun and baseball bats had entered the residence and were threatening the occupants. When the first officer arrived at the residence, he observed four males, wearing all black, exit the front door of the residence and run away.

When law enforcement officers spoke with the occupants of the residence, they described how four males wearing all black had pounded on their door in an attempt to gain access. When one of the occupants opened the door, the four males, who were armed with a handgun, a knife, and baseball bats, entered and demanded to know where "Hannah" was. They then began to rummage through the residence looking for unknown items and eventually grabbed a tool bag. This tool bag was later dropped on the front steps of the residence when the males ran from law enforcement.

The four male perpetrators were not immediately located, but law enforcement officers did observe a white sedan parked approximately a quarter of a block from the residence. The keys of the car were in the ignition and the car was running, but no one was inside. A search of the vehicle revealed a box of vinyl gloves and two cell phones. Law enforcement officers believed that the four males arrived at the residence in this vehicle.

A search of the cell phones found in the vehicle revealed that one of the phones had videos of the residence that was robbed and the surrounding area taken the evening before the robbery. This phone was later identified as belonging to Buettner. Messages retrieved from Buettner's phone show that in the hours leading up to the robbery Buettner arranged for other individuals to participate in the robbery with him and attempted to obtain additional guns to use during the robbery. The messages indicate that Buettner believed that there were drugs inside the residence that could be stolen. Adrian Gonzalez was one of the individuals who participated in the robbery with Buettner. Gonzalez apparently chose the victims of the robbery.

An investigation revealed that the white sedan involved in the robbery was owned by Kayden Smith. After multiple interviews with law enforcement, Smith admitted that he had permitted Buettner and Gonzalez to borrow his vehicle, knowing that they were going to use the vehicle to perpetrate a robbery. Smith was also aware that Buettner and Gonzalez were going to bring a handgun and a baseball bat with them to the robbery. He believed that the purpose of the robbery was to obtain money from the occupants of the residence.

After police arrested Buettner, he refused to provide any statement.

## 2. BUETTNER'S PRIOR OFFENSES

In July 2021, when Buettner was 14 years old, he was charged in Hall County with theft and criminal mischief. He was permitted to participate in a diversion program, where he completed community service hours, paid restitution, completed an online class, wrote an apology letter to his victims, and met with his diversion officer regularly. Buettner successfully completed the program in 3 months.

In March 2022, when Buettner was 15 years old, he was placed on probation by the Hall County Juvenile Court for being truant from school. He had been absent from school 28 days during the first part of the 2021-2022 school year and had been tardy an additional 8 times. As a part of the probationary order, Buettner was not to leave Nebraska or Hall County without permission, was to attend school every day, was to abstain from the use or possession of drugs and alcohol, and was prohibited from associating with any persons on probation.

In February 2023, the State filed a pleading in the juvenile court alleging that Buettner had committed multiple violations of his probation. According to the State, Buettner had left Hall County without permission and violated various laws in Buffalo County, such that he had been charged with two counts of assault and being a minor in possession of alcohol. In addition, he had tested positive for marijuana three times, was found with another youth who was also on probation, and had been absent from school 31 days since the start of the 2022-2023 school year. Buettner admitted to the violations, and the juvenile court extended his probationary period for an additional 9 months.

Due to his probation violations, Buettner was transitioned to a high risk probation program. After this transition occurred, Buettner again violated the terms of his probation by being charged in Harlan County with being a minor in possession, second offense, and with possession of a controlled substance. Buettner did not have permission from his probation officer to be in Harlan County. Additionally, Buettner continued to test positive for marijuana. Buettner was again placed in a diversionary program for his Harlan County offenses. As a part of this program, he completed a variety of online courses.

At the hearing on Buettner's motion to transfer, his Hall County probation officer, Shawn Maloley, testified. Maloley indicated that while on probation, Buettner met with him regularly, participated in drug testing, attended individual counseling, and began online schooling. He was also working on the family farm with his grandparents. Maloley indicated that there were concerns about Sheena's ability to impose sufficient discipline and oversight of Buettner at home.

Maloley testified that Buettner was not enrolled in all of the services available to him during his probationary term. Additional available services included electronic monitoring, a peer relationship class, anger regression training, multi-systemic therapy, in-home services, and, if necessary, placement at the Youth Rehabilitation and Treatment Center. Maloley believed that Buettner could benefit from continued juvenile probation if his current case was transferred to juvenile court. He testified that, in his opinion, Buettner still had enough time under the jurisdiction of the juvenile court to be successful.

Maloley's supervisor, Meghan Moland, testified similarly to Maloley. Moland believed that Buettner did not receive sufficient services beyond basic supervision as part of his 2022 probation order. She indicated that given Buettner's repeated probation violations, in particular,

that additional services should have been offered. Moland testified, that in her opinion, enough time existed before the jurisdiction of the juvenile court would end to work with Buettner and turn his life around.

### 3. SHEENA'S TESTIMONY

Sheena testified that Buettner is generally well-behaved and responsible at home and that he listens to her well, including about his curfew. She denied ever seeing Buettner act aggressively. Sheena did indicate that Buettner had a tendency to act out negatively when he spent time with his father, but his father has been incarcerated for the last year or so. Sheena admitted that while Buettner has not attended any therapy, that some type of mental health intervention may be beneficial to him.

Sheena indicated that she had read the messages sent by Buettner which indicated he participated in planning the robbery. She believed the messages were totally out of character for Buettner and that he was being pushed or bullied to participate by some of his older friends, including Gonzalez, whom she believed was the mastermind of the plans. Previously, Sheena had told Buettner that he could not associate with Gonzalez, but she knew that Buettner wanted to impress him, because he was older. She believed that Gonzalez was 21 or 22 years old. Sheena testified that Buettner does not have access to a gun and is not in a gang.

Since Buettner was released on bond after his arrest, Sheena explained that he attends online schooling and works on his school work for a few hours almost every day. Documentary evidence received at the hearing reflects that Buettner has attended online schooling since March 2023, more than a year prior to the June hearing. However, the documentary evidence demonstrates that he has only completed two classes in that time period, and has made less than 50 percent progress on each of his core classes.

Buettner also assists his grandparents with the family farm, working anywhere between 8 and 30 hours per week. Buettner has not had any contacts with law enforcement while out on bond and, according to Sheena, has been making better choices. She believed that if his case was moved to the juvenile court, Buettner would comply with and benefit from the requirements of juvenile probation. She testified that she was willing to assist him.

### 4. DISTRICT COURT ORDER

On July 11, 2024, the district court entered a five-page order overruling Buettner's motion to transfer his case to the juvenile court. The court found that the State had met its burden of proof and had shown a sound basis to retain Buettner's case in the district court. The details of the district court's consideration of the transfer factors contained in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2022) will be provided in our analysis below.

## III. ASSIGNMENT OF ERROR

Buettner assigns as error that the district court abused its discretion in denying his motion to transfer to the juvenile court.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d

915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. LEGAL FRAMEWORK

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Buettner put him within the latter category of juvenile offenders, and the State filed the charges against Buettner in the district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to § 29-1816(3).

In the instant case, when Buettner moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, "[i]t is a balancing test by which public

- 5 -

protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). "[I]n order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "[T]he burden of proving a sound basis for retention lies with the State." *Id.* at 557, 990 N.W.2d at 926.

### 2. WAS DENIAL OF TRANSFER ABUSE OF DISCRETION?

In his brief on appeal, Buettner alleges that the district court abused its discretion in analyzing the relevant statutory factors delineated in § 43-276(1). Specifically, Buettner argues,

> While this case is undeniably serious, all of the evidence supports the notion that Buettner's actions here were an anomaly and not consistent with his general behavior and attitude. And to the extent that understandable concerns remain, there is every reason to believe that any such concerns can be addressed through available juvenile court programming and supervision. Accordingly, the court should give Buettner an opportunity to better himself without the potential stigma and consequences of a felony conviction.

Brief for appellant at 20. Contrary to Buettner's claims on appeal, the State alleges "that the district court considered all the factors, and its conclusion is supported by the evidence and thus [is] not an abuse of discretion." Brief for appellee at 8. Ultimately, we agree with the contentions of the State.

### (a) Factors Found by District Court to Favor Retention

In its July 11, 2024 order, the district court addressed each of the factors contained in § 43-276(1). It explicitly found that five of the factors "weigh heavily in establishing a sound basis to retain jurisdiction in the District Court." The remaining factors are addressed by the district court, but no specific finding is made as to whether those factors weigh in favor of retention of the case or transfer to the juvenile court.

Under § 43-276(1)(b), whether the alleged offense included violence, the district court found "[Buettner] is charged with robbery, by definition a crime of violence. There is evidence that one of the people involved in [the] alleged robbery threatened the victim with at least the presence of a firearm." In his brief on appeal, Buettner concedes that this factor weighs in favor of the district court retaining jurisdiction. As such, we conclude that this factor clearly weighs in favor of retaining jurisdiction in the district court.

Under § 43-276(1)(c), the motivation for the offense, the district court noted that the apparent motivation for the robbery appeared to be revenge or retrieving money or drugs stolen from one of the perpetrators' associates. However, the district court also noted there was some evidence that Buettner was influenced to participate in the robbery by other participants. On appeal, Buettner focuses on the evidence that he participated merely to appear "tough" to his older friends. He contends that such motivation is "commonly associated with the irrational and impulsive mindset of a juvenile" and, as a result, it could be addressed with services in the juvenile court. Brief for appellant at 14.

In its brief on appeal, the State focuses on evidence presented at the transfer hearing which indicated that one of the perpetrators of the robbery threatened the residents with at least the presence of a firearm and that the perpetrators, especially, Buettner, had spent time planning the robbery. The State argues that the evidence demonstrated that the motivation for the robbery was to obtain cash or drugs and to seek revenge.

Given the evidence presented, we cannot say that the district court was wrong to find that this factor weighs in favor of retention. The overwhelming evidence, including the messages obtained from Buettner's phone, indicate that Buettner planned the robbery to help Gonzalez obtain revenge on an acquaintance and to obtain money and drugs from the residents. Such motivation is indicative of an intent to participate in dangerous criminal behavior.

Under § 43-276(1)(g), consideration of public safety, the district court found:

> Robbery is a serious offense. Other charges involve possession or use of a baseball bat and a firearm. The incident involved an armed confrontation against the residents of a private home. The circumstances of the alleged offenses present a threat to public safety. The charges are serious. The statutory penalties for those charges reflect a legislative policy of incarceration and or supervision for extended periods of time.

In his brief on appeal, Buettner agrees with the district court that the circumstances surrounding his charges are "clearly worrisome from a public safety perspective." Brief for appellant at 15. However, Buettner alleges that the public safety concerns presented by the robbery are mitigated by his relatively minor criminal history and his ability to maintain a crime-free lifestyle during the 7 months he has been out on bond since the robbery. He contends that given the diminished public safety concerns, the district court should have considered this factor to weigh in favor of transfer to the juvenile court.

In its brief on appeal, the State strongly agreed with the district court that Buettner's actions in planning and executing the robbery of a private residence presents a serious public safety concern. We agree. The district court did not err in finding this factor favors retention of the proceedings in the district court.

The district court also found that § 43-276(1)(h) and (i) weighed in favor of retaining the case in the district court. As to (h), consideration of the juvenile offender's ability to appreciate the nature and seriousness of his conduct, the district court indicated that the evidence presented at the transfer hearing indicated that Buettner assisted with the planning of the robbery and that he and the other perpetrators wore masks and gloves during the crime "which suggests some advance planning to avoid detection." The court also noted that Buettner ran from law enforcement officers, which "further indicates an appreciation of the wrongfulness of his conduct." As to (i), whether the best interests of the juvenile offender and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his minority, the court explicitly found, "Given the severity of the charges and presence of weapons, public safety considerations will require supervision extending beyond [Buettner's] minority to ensure that he is rehabilitated so as [to] not create a further risk to the public."

Buettner alleges that the district court improperly evaluated both of these factors. He contends that while there was evidence to suggest that he did not immediately consider his actions in participating in the robbery to be serious and that he did not respond appropriately to law

enforcement's questioning, that there was other, more compelling evidence which suggested that he was just a scared kid putting on a brave front in order to gain acceptance with an older peer group. Buettner also contends that the evidence reflected that there was plenty of time for him to comply with juvenile probation treatment programs prior to his reaching the age of majority and that, as such, transfer was appropriate. He noted that the evidence of his law-abiding behavior in the 7 months since committing the robbery demonstrated that he would comply with the juvenile court programming.

Contrary to Buettner's assertions, the State asserts that given the serious nature of Buettner's current charges, in addition to his escalating criminal behavior, that the interests of public safety would require Buettner to be under supervision beyond his 19th birthday. The State disagreed with the testimony of juvenile probation officers which indicated that Buettner has time to comply with and be successful on juvenile probation.

Given the evidence, we do not find that the district court erred in finding these factors favored retention in the district court. Buettner planned and executed a violent robbery of a private residence. He ran from law enforcement in order to evade detection and did not cooperate when he was ultimately arrested. Buettner's actions indicate that he was more than just a scared juvenile acting under the influence of his older friends. He was an active participant and will likely require supervision beyond that available in the juvenile court in order to minimize the chances of him being a threat to public safety.

(b) Factors Addressed but Not Specifically
Resolved by District Court

In *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023), the Supreme Court found that because it is the State's burden to prove that a sound basis exists for retaining a case in the district court, any factor found not to favor retention should be considered a factor that favors transfer. As such, no factor can be considered neutral or not applicable. Given this directive, we read the district court's order as implicitly finding that the remaining 10 factors that the court did not explicitly find to favor retention, favored transfer. We note that with respect to some of those factors, the district court makes factual findings which would seem to support retention. However, since no explicit resolution regarding the factor is made, we must presume that the court found that the State failed to satisfy its burden. We review the district court's implicit finding on these factors below.

Under § 43-276(1)(a), the type of treatment Buettner would be amenable to, we agree with the district court that there was evidence presented at the hearing which demonstrated that Buettner "could be successful in treatment in a juvenile setting prior to reaching the age of 19." We also agree with the district court that the evidence demonstrates that those programs would be available in an adult setting and that the evidence is unclear whether the needed therapies could be provided in a timely fashion.

The evidence demonstrated that while Buettner has been on juvenile probation, according to his probation officer, there were multiple services that were not offered to him which could have been beneficial to him. Those programs would still be available were this case transferred to the juvenile court for disposition. However, we must recognize the limited amount of time Buettner could remain under the jurisdiction of the juvenile court. At the time of the transfer hearing, there

was less than 2 years before Buettner would turn 19 years old. Accordingly, while there were treatments available to Buettner in a juvenile setting, there is certainly a question as to whether sufficient time would have existed for Buettner to benefit from such treatments. Given the short amount of time available coupled with Buettner's history of not complying with probation and his failure to learn from the programs that he had previously completed, we conclude this factor weighs slightly in favor of transfer.

Under § 43-276(1)(d), the age of Buettner and the ages and circumstances of others involved in the robbery, the district court noted that Buettner was 16 years old at the time of the robbery. The record reflects that one of the other perpetrators, Gonzalez, was older, but the ages of the others involved are not reflected in the record. In his brief on appeal, Buettner highlights this factor as being particularly important. He contends that he was merely trying to impress his older group of friends when he participated in the robbery. However, the evidence demonstrates that Buettner was far more than a participant in the robbery. He was closely involved with the planning and actively recruited other individuals to participate. Thus, despite his young age, Buettner took a leadership role in the alleged crime. As we said above, given Buettner's age at the time of the offense and at the time of the transfer hearing, we disagree with the district court's implicit finding that this factor favors transfer. Rather, we find that Buettner's age favors retention in the district court.

The district court found that Buettner's previous criminal history, under § 43-276(1)(e), included a status offense (truancy), which then escalated into "more significant criminal behavior." The district court also noted that Buettner had been placed in diversion programs in Hall, Buffalo, and Harlan Counties. The record reflects that his past criminal behavior includes theft, criminal mischief, assault, possession of a controlled substance, and being a minor in possession of alcohol. On appeal, Buettner minimizes his prior criminal behavior, referring to his prior offenses as "minor misdemeanor charges." Brief for appellant at 15.

Upon our review, we do not agree with Buettner's characterization of his past criminal history. It is clear that while Buettner was on probation for being truant, his criminal behaviors escalated and he failed to comply with even the most basic of his probationary requirements, including not leaving the county, not using drugs or alcohol, and regularly attending school. While on probation, Buettner was charged in other counties with two counts of being a minor in possession of alcohol, two counts of assault, and one count of being in possession of a controlled substance. In addition, Buettner committed the current offense while still on probation. We find that given Buettner's escalating criminal behavior and his failure to comply with the terms of his juvenile probation, this factor weighs in favor of retention.

Under § 43-276(1)(f), Buettner's best interests, the district court found, "[Buettner] has no significant prior record, a felony conviction will most likely have long term adverse consequences for [him]." Buettner agrees that this factor clearly weighs in favor of transfer to the juvenile court. We agree. It would be in Buettner's best interests to transfer the case to the juvenile court. Like any other juvenile, Buettner's long-term interests would be better served with adjudication in the juvenile court rather than having an adult record containing felony convictions.

Under § 43-276(l), whether Buettner has been convicted or has acknowledged unauthorized use or possession of a firearm, the district court noted that there was a firearm involved in the robbery incident. However, there was no evidence regarding Buettner having been

previously convicted of or admitting to unauthorized use of a firearm. Upon our review of the record, we are drawn to Buettner's text messages in the time leading up to the robbery wherein he is attempting to gain access to multiple firearms to utilize during the offense. In his brief on appeal, Buettner does not discuss such evidence, focusing only on the fact that he did not hold the handgun during the robbery. We find that this factor weighs slightly in favor of retention in the district court. Even though the firearm was carried by an accomplice, Buettner actively sought firearms to be used in the robbery and then participated in the robbery. He clearly demonstrated a desire to have as many firearms as possible present during the robbery.

As to § 43-276(1)(j), participation in restorative justice with the victim; (k), availability of pretrial diversion; (m) presence of prior juvenile court order; and (n) whether Buettner is a member of a criminal street gang, the district court found that neither party presented any evidence about these factors. We agree. Thus, given the Supreme Court's directive in *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023), we find that these factors weigh in favor of transfer to the juvenile court.

### (c) No Abuse of Discretion

Out of the five factors the district court deemed to favor retention of the case in the district court, we agree that all five of those factors supported retention. The district court was properly concerned about the violent nature of Buettner's alleged criminal conduct, the safety of the public, and Buettner's need for supervision over a period of years and the limited time available to the juvenile court to work with him.

In addition to the five factors the district court explicitly found to favor retention, we find that three of the remaining statutory factors, which we must consider to have been implicitly found to favor transfer by the district court, actually favor retention. Buettner's age, his escalating criminal behavior, and his solicitation of firearms for use in the robbery, all favor retention in the district court. Evidence presented at the transfer hearing revealed that Buettner's criminal behavior and mindset had begun to escalate. Such escalation had occurred despite his ongoing involvement with juvenile probation and multiple diversion programs. Even with that intervention, Buettner's behaviors continued to worsen, culminating in his involvement in a home invasion robbery. And, while there are still services available to Buettner in a juvenile court setting, the evidence presented at the transfer hearing indicates that even with the availability of services, there is serious concern as to whether Buettner would avail himself of those services. Even if he did so, it is highly questionable whether there is enough time for those services to change the course of Buettner's decision-making.

When the district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Leroux*, 26 Neb. App. 76, 916 N.W.2d 903 (2018). Therefore, because there was ample evidence supporting retention of this case in the district court, we find no abuse of discretion in the district court's order denying Buettner's request to transfer his case to juvenile court.

## VI. CONCLUSION

Finding no abuse of discretion by the district court in its decision to retain jurisdiction over Buettner, we affirm the district court's order denying the motion to transfer the proceedings to juvenile court.

AFFIRMED.